# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

**May 03, 2023**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of )<br>Motorola Telephone, logged as FBI evidence )<br>number 1B337- "SLTPD Case#: 2008-1340, )<br>'Item #: 190-064,", CURRENTLY )<br>LOCATED AT FBI Sacramento Evidence )<br>Room, Roseville, California ) | Case No.   2:23-sw-0434 AC |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

## SEE ATTACHMENT A, attached hereto and incorporated by reference.

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

## SEE ATTACHMENT B, attached hereto and incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| **21 U.S.C. § 846, 841(a)(1)** | **Conspiracy to Distribute and Possess with Intent to Distribute controlled substances** |
| **21 U.S.C. § 841(a)(1)** | **Distribution of controlled substances** |
| **18 U.S.C. § 922(g)** | **Felon in possession of a firearm** |

The application is based on these facts:

## SEE AFFIDAVIT, attached hereto and incorporated by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Preston Patton

*Applicant's signature*

Preston Patton, Special Agent, FBI

*Printed name and title*

Sworn to me and signed via telephone.

Date:   May 3, 2023

City and state:   Sacramento, California

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

PHILLIP A. TALBERT
United States Attorney
JAMES R. CONOLLY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| Motorola Telephone, logged as FBI evidence number 1B337- "SLTPD Case#: 2008-1340, 'Item #: 190-064," CURRENTLY LOCATED AT FBI Sacramento Evidence Room, Roseville, California | AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH DEVICE |

1.      I, Preston Patton, being first duly sworn, hereby depose and state as follows:

### I.      INTRODUCTION AND AGENT BACKGROUND

2.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of

Criminal Procedure for a search warrant authorizing the examination of property—an electronic

device—which is currently in law enforcement possession, and the extraction from that property of

electronically stored information described in Attachment B.

3.      I am a Special Agent with the FBI, and have been since 2014.  I am currently assigned to

the South Lake Tahoe Resident Agency (RA) of the Sacramento Division of the FBI. I have been

assigned to the South Lake Tahoe RA since March 2020. In my role as a Special Agent, I have

participated in cases involving cartel and gang related narcotics investigations as well as domestic

terrorism and national security. I graduated from FBI New Agents Training in Quantico, VA in

December 2014.  While there, I received training in drug and gun investigations as well as confidential

human source operations. Since that time, I have received on the job training from senior agents on a

AFFIDAVIT                                        1

1  violent crime squad in Sacramento responsible for transnational organized crime and street gang

2  investigations. During that time, I managed cartel cases and assisted agents on the Sacramento Safe

3  Streets Task Force. Additionally, I have and am currently working alongside agents from the Bureau of

4  Alcohol, Tobacco, Firearms, and Explosives (ATF) as well as the Drug Enforcement Administration

5  (DEA).

6      4.      This Affidavit is made to support an application to search a cellular telephone associated

7  with William **Owen** who is being investigated for violations of the following:

8          a.  21 U.S.C. § 846, 841(a)(1), Conspiracy to Distribute Methamphetamine and Heroin

9          b.  21 U.S.C. § 841(a)(1), Distribution of Methamphetamine and Heroin

10         c.  18 U.S.C. § 922(g), Felon in possession of a firearm.

11     5.      I am familiar with the facts and circumstances of the investigation through my role as

12  case agent. I am familiar with the circumstances surrounding **Owen's** arrest based on speaking with the

13  arresting officers.

14     6.      This affidavit is intended to show only that there is sufficient probable cause for the

15  requested warrant and does not set forth all of my knowledge about this matter.

16          **II.      IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

17     7.      The property to be searched is Motorola Telephone, logged as FBI evidence number

18  1B337- "SLTPD Case#: 2008-1340, 'Item #: 190-064," (the "**Device**").  The **Device** is currently located

19  at FBI Sacramento Evidence Room, Roseville, California.

20     8.      The applied-for warrant would authorize the forensic examination of the **Device** for the

21  purpose of identifying electronically stored data particularly described in Attachment B.

22          **III.      PROBABLE CAUSE**

23     9.      In the spring of 2020, the FBI Sacramento Division - South Lake Tahoe Resident

24  Agency, SLTPD, El Dorado County Sheriff's Office (EDSO), and Douglas County Sheriff's Office

25  (DCSO) initiated an investigation to identify, arrest, prosecute, and disrupt narcotics and firearms

26  distributors operating in and around South Lake Tahoe, California.

27  / / /

28  / / /

AFFIDAVIT                                          2

1    10.    Through this investigation, the FBI identified Sacramento-based **William Douglas**

2  **Owen,** a suspected "Sacramaniac"[1] gang affiliate, as the main source of narcotics supply to **Wendy**

3  **Labuda,** who in turn supplied other subjects, identified during the same investigation, and who were

4  indicted by a federal grand jury in June 2022.

5    11.    Between January 13 and March 01, 2022, **Owen** delivered approximately 2,361 grams

6  (5 lbs) of methamphetamine and 91 grams of heroin to **Labuda** during controlled purchases. These

7  purchases were covertly audio and video recorded and were also captured by surveillance units and/or

8  security cameras.  During the course of these controlled purchases, the FBI identified **Owen's** residence

9  and a business as potential drug stash locations.

10    12.    On June 16, 2022, FBI agents and law enforcement officers executed federal search

11  warrants, signed by U.S. Magistrate Judge Kendall J. Newman in the Eastern District of California, at

12  **Owen's** residence and business (Case Nos. 2:22-SW-421-KJN [residence] and 2:22-SW-422-KJN

13  [business]).  Simultaneously, investigators arrested four associated subjects in South Lake Tahoe and

14  executed a federal search warrants at their locations.  Officers arrested **Labuda** on a federal arrest

15  warrant on June 17, 2022.

16    13.    During the search at **Owen's** residence, which included the search of his black Cadillac

17  sedan, investigators seized the following contraband which was later tested by the DEA laboratory:

18    a.  One large bag, one small bag, and a pill bottle containing approximately 1,066 grams of

19       methamphetamine with a purity of approximately 98%;

20    b.  Approximately 41 grams of heroin separated into two smaller quantities;

21    c.  Pill bottle containing a mixture of approximately 5 grams of fentanyl and 5 grams of cocaine;

22    d.  Drug paraphernalia; and

23    e.  Digital scale

24    14.    At the same time, investigators executed a federal search warrant at a commercial

25  building identified as housing Owen's business, 3320 Marysville Blvd., Sacramento, California.   This

26  building was divided into four separate units, labeled A through D.

27

28    [1] From my training and experience, I know the "Sacramaniacs" to be a criminal motorcycle gang that operates in and around Sacramento.

AFFIDAVIT                                            3

15.     The investigation determined that although **Owen** was associated with both units C and D, **Owen** was the sole user of Unit D, based on multiple observations of **Owen** accessing Unit D during multiple days of surveillance, statements made by the other tenant of the building, and indicia found in Unit D.

16.     While searching Unit D, investigators seized the following contraband:

    a.  A fully-automatic Glock 9mm handgun (S/N: BTRT749), outfitted with a laser sight and Glock "switch," hidden in the back of a modified car seat, along with a loaded 50 round drum magazine and a second loaded 30 round magazine.[2]

    b.  A green Glock style "Polymer 80%" handgun with magazine loaded, hidden inside a washing machine with dirty laundry.

    c.  A third, high-capacity 30-round Glock magazine (empty) and a loaded high capacity assault rifle magazine both hidden in the back of a second modified car seat.

    d.  A plastic box, magnetically attached to the undercarriage of a Pontiac GTO located inside Unit D, which contained:

        i.   Three loaded Glock magazines

        ii.  Numerous rounds of 9mm ammunition

        iii. Three hypodermic needles commonly used for the injection of narcotics

        iv.  2 doses of 4 milligram Narcan Nasal Spray (similar in appearance to the Narcan spray issued to law enforcement personnel for the purposes of saving the life of an individual overdosing on an opioid drug).

    e.  Geico insurance records in the Pontiac GTO, showing that **Owen** and his wife had a current vehicle insurance policy on the vehicle, with an expiration date of June 10, 2022.

    f.  An assault rifle magazine found in the pocket of a leather jacket hanging on a coat rack.

    g.  An empty safe hidden inside the wall of a storage room attached to Unit D; and

---

[2] A "switch" is a small device, roughly the size of a penny, which, when installed on the back of a Glock semi-automatic handgun, converts the firearm into a fully-automatic machinegun capable of firing 15-20 rounds per second.  Based on the training and experience of the affiant, the laser sight can allow a shooter to fire rapidly without slowing down to use a weapon's iron sights. It appeared that this handgun was setup to rapidly fire numerous rounds without the use of iron sights.

1      h.   Multiple forms of indicia, including mail and other miscellaneous paperwork, bearing the

2           name **William Owen** (or "**Bill Owen**"), with an address of 3320 Marsyville Blvd.,

3           Unit C, Sacramento, CA and 2100 Ethan Way, Sacramento, CA.

4      17.    Just prior to the FBI Sacramento Division SWAT team's execution of the federal search

5  warrant at **Owen's** residence, a male and female believed to be **Owen** and his wife departed in separate

6  vehicles.  When he left, **Owen** departed in a white Chevrolet Corvette.[3]

7      18.    On June 21, 2022, investigators obtained a warrant (Case No. 2:22-sw-0436 CKD) to

8  locate **Owen's** cellular phone (the **Device**).  Later, on the same day, investigators located the **Device** in

9  the possession of a transient man and woman who claimed that they had found the **Device** on or about

10 June 20, 2022 in the middle of a major street in the Arden Arcade part of Sacramento.  Using the

11 telephone number discovered during the residential search warrant on June 16, 2022, investigators

12 confirmed that the telephone which the man and woman had found was in fact the **Device**.  It appeared

13 that **Owen** had discarded and possibly attempted to destroy the **Device** in an effort to evade law

14 enforcement.

15     19.    The **Device** has been in the custody of the FBI since June 21, 2022.

16     20.    On June 30, 2022, a federal grand jury in the Eastern District of California indicted

17 **Owen** and seven other related federal subjects on various counts of violating the following:

18     a.   21 U.S.C. § 846, 841(a)(1), Conspiracy to Distribute and Possess with Intent to

19          Distribute Methamphetamine; and

20     b.   21 U.S.C. § 841(a)(1), Distribution of Methamphetamine and Heroin.

21     21.    On the night of June 30, 2022, one of **Owen's** associates reported his location to

22 investigators from the Sacramento County Sheriff's Office (SCSO) Gang Suppression Unit (GSU).

23 Based on this information, GSU investigators located and arrested **Owen** without incident.

24     22.    Based on the above facts, there is probable cause to believe that the **Device** was owned

25 and used by **Owen** prior to his discarding of it. Furthermore, there is probable cause to believe that a

26

27     [3] During the execution of the search warrant, investigators spoke with **Owen's** daughter at the
   residence, so it is likely that she later alerted **Owen** to fact that agents had searched his home.  Instead of
28 turning himself in or contacting law enforcement regarding the search warrants, however, **Owen** went
   into hiding and became a fugitive.  Investigators located and arrested him on June 30, 2022.

AFFIDAVIT                                    5

search of the **Device** will reveal evidence pertaining to **Owen**'s violations of the following:

        a.  21 U.S.C. § 846, 841(a)(1), conspiracy to distribute methamphetamine and heroin;

        b.  21 U.S.C. § 841(a)(1), distribution of methamphetamine and heroin;

        c.  18 U.S.C. § 922(g), felon in possession of a firearm.

23.    Because **Owen** appears to have abandoned the **Device** during his flight from arrest, it is likely that the United States does not require warrant to search it and to seize information from it. Nevertheless, out of an abundance of caution, the United States submits this application to the Court to establish that there is probable cause to believe that the **Device** belong to, and was used by, **Owen**, at the time he was engaged in the conduct described above, and that there is a strong likelihood that the **Device** will contain evidence of the crimes also listed above.

24.    The **Device** is currently in storage at the FBI Sacramento Evidence Room, Roseville, California.  In my training and experience, I know that the **Device**, identified in Attachment A, has been stored in a manner in which the contents of the **Device** are, to the extent material to this investigation, in substantially the same state as when the **Device** first came into the possession of law enforcement on June 21, 2022.

### IV.    TECHNICAL TERMS

25.    Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and

AFFIDAVIT

6

1   downloading information from the Internet.  Wireless telephones may also include global

2   positioning system ("GPS") technology for determining the location of the device.

3        b.     Digital camera:  A digital camera is a camera that records pictures as digital picture files,

4   rather than by using photographic film.  Digital cameras use a variety of fixed and removable

5   storage media to store their recorded images.  Images can usually be retrieved by connecting the

6   camera to a computer or by connecting the removable storage medium to a separate reader.

7   Removable storage media include various types of flash memory cards or miniature hard drives.

8   Most digital cameras also include a screen for viewing the stored images.  This storage media

9   can contain any digital data, including data unrelated to photographs or videos.

10        c.     Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld

11   digital storage device designed primarily to store and play audio, video, or photographic files.

12   However, a portable media player can also store other digital data.  Some portable media players

13   can use removable storage media.  Removable storage media include various types of flash

14   memory cards or miniature hard drives.  This removable storage media can also store any digital

15   data.  Depending on the model, a portable media player may have the ability to store very large

16   amounts of electronic data and may offer additional features such as a calendar, contact list,

17   clock, or games.

18        d.     GPS:  A GPS navigation device uses the Global Positioning System to display its current

19   location.  It often contains records the locations where it has been.  Some GPS navigation

20   devices can give a user driving or walking directions to another location.  These devices can

21   contain records of the addresses or locations involved in such navigation.  The Global

22   Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting

23   the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly

24   transmits by radio a mathematical representation of the current time, combined with a special

25   sequence of numbers.  These signals are sent by radio, using specifications that are publicly

26   available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives

27   signals from at least four satellites, a computer connected to that antenna can mathematically

28   calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

AFFIDAVIT

e.     PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

g.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

26.     Based on my training, experience, and research, I know that the devices have capabilities that allow it to serve as a mobile telephone, digital camera, PDA, portable media player GPS, and internet browser.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## V.     ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are

AFFIDAVIT                                                   8

1   typically stored for some period of time on the device.  This information can sometimes be recovered

2   with forensics tools.

3        28.     Forensic evidence.  As further described in Attachment B, this application seeks

4   permission to locate not only electronically stored information that might serve as direct evidence of the

5   crimes described on the warrant, but also forensic evidence that establishes how the **Device** was used,

6   the purpose of its use, who used it, and when. There is probable cause to believe that this forensic

7   electronic evidence might be on the **Device** because:

    a.     Data on the storage medium can provide evidence of a file that was once on the storage

    medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph

    that has been deleted from a word processing file).

    b.     Forensic evidence on a device can also indicate who has used or controlled the device.

    This "user attribution" evidence is analogous to the search for "indicia of occupancy" while

    executing a search warrant at a residence.

    c.     A person with appropriate familiarity with how an electronic device works may, after

    examining this forensic evidence in its proper context, be able to draw conclusions about how

    electronic devices were used, the purpose of their use, who used them, and when.

    d.     The process of identifying the exact electronically stored information on a storage

    medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic

    evidence is not always data that can be merely reviewed by a review team and passed along to

    investigators.  Whether data stored on a computer is evidence may depend on other information

    stored on the computer and the application of knowledge about how a computer behaves.

    Therefore, contextual information necessary to understand other evidence also falls within the

    scope of the warrant.

    e.     Further, in finding evidence of how a device was used, the purpose of its use, who used

    it, and when, sometimes it is necessary to establish that a particular thing is not present on a

    storage medium.

    29.     Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the

warrant I am applying for would permit the examination of the device consistent with the warrant.  The

AFFIDAVIT

9

examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30.     Manner of execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VI.     CONCLUSION

31.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Device** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Preston Patton

Preston Patton
Special Agent
FBI

Subscribed and sworn to me via telephone:     May 3, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

Approved as to form by
AUSA JAMES R. CONOLLY

AFFIDAVIT                                        10

## **ATTACHMENT A**

The property to be searched includes the following:

A Motorola Telephone, logged as FBI evidence number 1B337- "SLTPD Case#: 2008-1340,

'Item #: 190-064," (the "**Device**").  The **Device** is currently located at FBI Sacramento Evidence

Room, Roseville, California.


This warrant authorizes the forensic examination of the **Device** for the purpose of identifying the

electronically stored information described in Attachment B.

## ATTACHMENT B

All records on the **Device** described in Attachment A that relate to violations of: (1) 21 U.S.C. § 846, 841(a)(1), conspiracy to distribute methamphetamine and heroin; (2) 21 U.S.C. § 841(a)(1), distribution of methamphetamine and heroin; (3) 18 U.S.C. § 924(c), possession of a firearm in relation to drug trafficking; and (4) 18 U.S.C. § 922(g), felon in possession of a firearm, that have involved **Owen** since January 1, 2022, including:

a.   text messages, pictures, or other communications related to narcotics and firearm purchases and/or sales, ammunition purchases and/or sales, and/or the possession of firearms and/or ammunition

b.   location data either stored as GPS locations, cellular tower connection data, metadata in photographs, social networking posts, wi-fi logs, and data associated with installed applications.

c.   all telephone numbers or identities assigned to the Device, including the Electronic Serial Number (ESN) and the International Mobile Subscriber Identity number (IMSI) relating to the cellular telephone;

d.   call history information, including dates, times, and duration of telephone calls, as well as the contact information related to those calls;

e.   telephone book or list of contacts;

f.   Photographs and/or videos, in particular photographs and/or videos of narcotics, firearms, and or ammunition.

g.   lists of customers and related identifying information;

h.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

i.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

j.   any information recording **Owen's** schedule or travel from January 1, 2022, to the present;

k.   all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet Protocol address, including:

    a.   records of Internet Protocol addresses used;

    b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant permits the examination of the Devices and may require authorities to employ techniques, including but not limited to the use of forensic tools for cell phones, computer-assisted scans of the entire medium, imaging and analysis, or human inspection in order to identify the items listed herein. Should the Devices be password protected, it may take several weeks to complete the search.

The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  The agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) | |
| Motorola Telephone, logged as FBI evidence number )<br>1B337- "SLTPD Case#: 2008-1340, 'Item #: 190- )<br>064,'", CURRENTLY LOCATED AT FBI )<br>Sacramento Evidence Room, Roseville, California ) | Case No.          2:23-sw-0434 AC |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the          Eastern          District of          California
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before          May 16, 2023          *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for  30  days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of                              .

Date and time issued:          May 3, 2023 @ 12:20 p.m.

City and state:          Sacramento, California

*allison Clari*

**ALLISON CLAIRE**
**UNITED STATES MAGISTRATE JUDGE**

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____
Signature of Judge                                                                 Date

**ATTACHMENT A**

The property to be searched includes the following:

A Motorola Telephone, logged as FBI evidence number 1B337- "SLTPD Case#: 2008-1340,

'Item #: 190-064," (the "**Device**").  The **Device** is currently located at FBI Sacramento Evidence

Room, Roseville, California.


This warrant authorizes the forensic examination of the **Device** for the purpose of identifying the

electronically stored information described in Attachment B.

## ATTACHMENT B

All records on the **Device** described in Attachment A that relate to violations of: (1) 21 U.S.C. § 846, 841(a)(1), conspiracy to distribute methamphetamine and heroin; (2) 21 U.S.C. § 841(a)(1), distribution of methamphetamine and heroin; (3) 18 U.S.C. § 924(c), possession of a firearm in relation to drug trafficking; and (4) 18 U.S.C. § 922(g), felon in possession of a firearm, that have involved **Owen** since January 1, 2022, including:

a.  text messages, pictures, or other communications related to narcotics and firearm purchases and/or sales, ammunition purchases and/or sales, and/or the possession of firearms and/or ammunition

b.  location data either stored as GPS locations, cellular tower connection data, metadata in photographs, social networking posts, wi-fi logs, and data associated with installed applications.

c.  all telephone numbers or identities assigned to the Device, including the Electronic Serial Number (ESN) and the International Mobile Subscriber Identity number (IMSI) relating to the cellular telephone;

d.  call history information, including dates, times, and duration of telephone calls, as well as the contact information related to those calls;

e.  telephone book or list of contacts;

f.  Photographs and/or videos, in particular photographs and/or videos of narcotics, firearms, and or ammunition.

g.  lists of customers and related identifying information;

h.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

i.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

j.  any information recording **Owen's** schedule or travel from January 1, 2022, to the present;

k.  all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet Protocol address, including:

a.   records of Internet Protocol addresses used;

b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant permits the examination of the Devices and may require authorities to employ techniques, including but not limited to the use of forensic tools for cell phones, computer-assisted scans of the entire medium, imaging and analysis, or human inspection in order to identify the items listed herein. Should the Devices be password protected, it may take several weeks to complete the search.

The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  The agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.